UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRADALL INDUSTRIES, INC., | ) | Case No. 5:20-cv-01493 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 54, *et al.*, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Following an evidentiary hearing conducted pursuant to a collective bargaining agreement, an arbitrator ordered Gradall Industries, Inc. to pay one of its employees for six hours of weekend overtime he did not actually work as a remedy for an admitted violation of the agreement's overtime provision. Because the collective bargaining agreement contains language that the Company has no economic liability for failing to equalize overtime, Gradall seeks to vacate the award. On behalf of its employee, the union points out that the arbitrator considered the language of the agreement, the parties' bargaining history, and their history of overtime disputes in determining the appropriate remedy. Each side presents reasoned interpretations of how the agreement applies to this dispute. Under the deference that governs review of arbitration awards under federal labor law, the Court determines that the arbitrator acted within his authority by issuing an award that draws its essence from

the parties' agreement. Because the parties bargained for an award from an arbitrator, the Court has no authority to substitute its interpretation of the collective bargaining agreement for the arbitrator's.

## FACTUAL AND PROCEDURAL BACKGROUND

Gradall Industries, Inc. and the International Association of Machinists and Aerospace Workers (AFL-CIO) District Lodge 54, Local Lodge 1285 are parties to a collective bargaining agreement. (ECF No. 1-2, R. 94, PageID #150.) With respect to overtime, Article X of the agreement provides that Gradall Industries retains the right to decide which employees will work overtime, but committed to make good-faith efforts to distribute overtime equitably among its employees. (*Id.*, R. 104, PageID #160.) Specifically, the agreement provides:

> 10.2. The Company retains the right to determine which employees shall be assigned overtime. In so doing, the Company will attempt to distribute overtime equitably to those who performed the work on straight time. . . . Under no circumstances will the Company have an economic liability for failure to equalize overtime.

(*Id.*)

On Saturday, September 28, 2019, an opportunity for six hours of weekend overtime became available in the classification Cody McMillen had worked that week on straight time. (*Id.*, R. 220, PageID #276.) However, the Company awarded the overtime to a different employee who did not perform work in that classification during the week.

The Union filed a grievance alleging a violation of Section 10.2 of the collective bargaining agreement. (*Id.*, R. 173, PageID #229.) During the grievance process,

Gradall admitted that it should have awarded the overtime to Mr. McMillen. (*Id.*, R. 134, PageID #190; *id.*, R. 176, PageID #232.) As a remedy, the Company proposed to allow Mr. McMillen to work overtime for which he would not otherwise be eligible (*id.*)—to which the Union objected because that remedy takes the overtime away from another employee, creating another violation (*id.*, R. 133, PageID 189; R. 177, PageID #233). This stalemate persisted through the grievance process, resulting in an evidentiary proceeding before an arbitrator. (*Id.*, R. 1, PageID #57.)

In his written ruling, the arbitrator framed the issue as the appropriate remedy for violation. (*Id.*, R. 234, PageID #290.) Based on the arguments of the parties, and the Company in particular, the arbitrator examined the evidence in the record regarding the parties' bargaining history. (*Id.*, R. 237, PageID #293.) Among other things, the arbitrator considered evidence that, throughout the fifteen-year bargaining history between the Union and the Company, the language in the last sentence of Section 10.2, limiting the Company's economic liability for failing to equalize overtime, remained in the collective bargaining agreement—albeit in various locations. (*Id.*, R. 237–39, PageID #293–95.) Additionally, the arbitrator considered the history of overtime disputes between the parties, including a previous similar incident involving Mr. McMillen that did not result in the filing of a grievance. (*Id.*, R. 239–40, PageID #295–96.)

Based on the parties' bargaining history and previous overtime disputes, the arbitrator identified what he considered "the gravamen of this case: The tension between Article 10.2's requirement that the Company distribute overtime '*equitably*',

3

[*sic*] which appears four times in Article 10.2, and the parties' practices for the equalization of overtime." (*Id.*, R. 240, PageID #296.) Regarding the evidence of the parties' past practices, the arbitrator declined to find that the Union accepted a practice that would bar monetary compensation in the instance involving Mr. McMillen. (*Id.*, R. 241, PageID #297.) Based on the record before him, the arbitrator determined that the term "equitably" in Section 10.2 means that "[o]vertime opportunities are to be offered to the employee who's [*sic*] preceding straight time work is the same as the overtime work opportunity; provided they are '. . . low on the overtime list.'" (*Id.*) Therefore, the arbitrator found that Section 10.2 does not shield the Company from economic liability where, as here, "it fails to equitably distribute overtime." (*Id.*, R. 242, PageID #298.) On this basis, the arbitrator sustained the grievance and awarded six hours of overtime pay to Mr. McMillen. (*Id.*)

The Company moved to vacate the arbitral award (ECF No. 1-3, PageID #299.) In addition to opposing the Company's motion, the Union filed a counterclaim seeking to enforce the arbitration award and moved for summary judgment on the counterclaim. (ECF No. 5; ECF No. 6, PageID #501.)

## STANDARD OF REVIEW

To be entitled to summary judgment, the movant must demonstrate that there is "no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

The Company framed its motion to vacate under State law before removal to federal court. But federal labor law governs review of arbitration conducting under a collective bargaining agreement. *See Samaan v. General Dynamics Land Sys., Inc.*, 835 F.3d 593, 599 (6th Cir. 2016) (citations omitted). Under federal labor law, the Court plays a very limited role when reviewing the decision of an arbitrator. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Kuhlman Elec. Corp. v. UAW*, 144 F.3d 898, 902 (6th Cir. 1998).

> The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). So long as an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn the decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006). Courts have no power to reconsider the merits of an award even when it rests on misinterpretation of a contract. *See Misco*, 484 U.S. at 36.

"Having authorized the arbitrator to give meaning to the language of the agreement, the court should not reject an award on the ground that the arbitrator misread the contract." *Id*. The role of the court is confined to ascertaining whether the grievance on its face is governed by the contract, and a court may not determine

whether particular language in the collective bargaining agreement supports the claim. *See id.* at 36–37 (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68 (1960)). "[A] court will not vacate an arbitrator's decision unless it cannot, in any rational way, be derived from the collective bargaining agreement." *Knollwood Cemetery Ass'n v. United Steelworkers of America*, 789 F.2d 367, 369 (6th Cir. 1986) (per curiam).

Nonetheless, an arbitrator's award must "draw its essence" from the collective bargaining agreement. *See Enterprise Wheel*, 363 U.S. at 597. An arbitrator may only interpret and apply a collective bargaining agreement and cannot "dispense his own brand of industrial justice." *Id.*; *see also Misco*, 484 U.S. at 36. An award fails to draw its essence from a collective bargaining agreement where it: (1) conflicts with or ignores the express terms of the contract; (2) imposes additional requirements not expressly provided for in the agreement; (3) is not rationally supported by or derived from the agreement; or (4) finds its basis in general considerations of fairness and equity instead of the language of the agreement. *See Kuhlman Elec.*, 144 F.3d at 902; *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir. 1987); *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir. 1986).

Under these principles, "only the most egregious arbitration awards should be vacated on appeal" to the federal courts because "our review of an arbitration award is one of the narrowest standards of review in all of American jurisprudence."

*Manville v. Int'l Bhd. of Teamsters, Local 20,* 784 F. App'x 425, 428 (6th Cir. 2019) (quotation omitted).

## ANALYSIS

Against the backdrop of this deferential standard, Gradall makes two substantive arguments and raises a procedural challenge to the Union's motion for summary judgment.

### I.

Substantively, the Company argues that the arbitrator exceeded his authority in violation of law and the specific language of Section 5.2(b) of the collective bargaining agreement. (ECF No. 1-2, R. 98, PageID #154.) Specifically, Gradall argues that the arbitrator ignored the plain meaning of Section 10.2 and interpreted it in such a way as to create economic liability for the Company. Also, Gradall maintains that the arbitrator did not arguably interpret and apply the parties' collective bargaining agreement, instead creating obligations out of whole cloth. In particular, the Company objects to the arbitrator's award because it requires payment of Mr. McMillen for work he did not perform, creating an economic liability for Gradall contrary to the language of Section 10.2. The Court addresses these substantive arguments together.

Contrary to the Company's claim that the arbitrator exceeded his authority, the award embodies the decision of an arbitrator for which the parties bargained. Although Gradall presents a possible, even likely, interpretation of Section 10.2 of the collective bargaining agreement, the arbitrator based his reading on the parties' bargaining history (including the Company's longstanding objections to payment of

7

overtime for work not performed) and past practices after taking evidence at a hearing. In his award, the arbitrator considered that evidence and interpreted the collective bargaining agreement accordingly.

Moreover, the arbitrator considered the meaning of the term "equitably" in light of the evidence before him, including the meaning of that term based on its different locations in the parties' collective bargaining history over time. In doing so, the arbitrator considered competing interpretations of Section 10.2 and selected the one he thought best gave effect to the parties' agreement and practices. In this respect, the arbitrator's award represents an interpretation of the parties' agreement. Because the arbitrator was construing the agreement and acting within the scope of his authority, the Court may not set aside the award even if convinced the arbitrator committed a serious error. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006). Under the deferential standard of review, the Court declines to vacate the award and determines that the Union is entitled to a summary judgment in its favor.

## II.

Procedurally, Gradall takes issue with the Union's counterclaim to the extent it alleges a violation of Section 5.4 of the collective bargaining agreement. That provision makes an arbitrator's decision "final and binding on the Company, Union, and the employee." (ECF No. 1-2, R. 99, PageID #155.) On this issue, the Court does not read the counterclaim as asserting a violation of Section 5.4 and agrees with

Gradall that it had a right to move to vacate the arbitrator's award. The Union does not argue to the contrary in its motion for summary judgment. Accordingly, in entering judgment in favor the Union, the Court does not find that Gradall's action to obtain judicial review of the arbitrator's award constitutes a violation of the collective bargaining agreement.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Gradall's motion to vacate the arbitrator's award and **GRANTS** the Union's motion for summary judgment (except to the extent, if any, it seeks a judgment that Gradall violated Section 5.4 of the collective bargaining agreement by seeking review of the award). In granting the Union's motion for summary judgment, the Court confirms the award, including prejudgment interest back to June 2, 2020. Further, the Court cancels the status conference scheduled in this matter.

**SO ORDERED.**

Dated: January 13, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio